***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission affirms with minor modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. Liberty Mutual Insurance Company is the carrier on the risk.
3. An employee-employer relationship existed between the parties at all relevant times.
 ***********
Based upon the evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. On 12 April 1995, plaintiff was working as a tractor trailer driver for defendant-employer when he suffered an injury by accident.
2. Plaintiff retained Randy Meares as counsel to assist him in his workers' compensation claim. Although Mr. Meares was a licensed attorney at the time he represented plaintiff, he was subsequently disbarred.
3. Mr. Meares and defendants' attorney, Paige Williams, agreed to participate in a voluntary mediation in an attempt to settle plaintiff's workers' compensation claim. No request for hearing had been filed by either party at the time.
4. On 21 August 1996, the case was mediated and settled. Pursuant to the agreement, defendant-carrier agreed to pay plaintiff $89,500.00 in a lump sum, medical expenses for one year, and up to $7,000.00 for one year of vocational rehabilitation services.
5. At the time of the mediation, plaintiff was still being treated at least weekly by neuropsychologist Dr. Robert Conder and at least monthly by psychiatrist Dr. Thad Barringer for his psychological dysfunction. For the months of July and August, 1996, plaintiff saw Dr. Conder on 25 and 30 July, and 1, 6, 8, 20, 27, and 29 August.
6. Dr. Barringer treated plaintiff on 18 July, 13 August, and 30 August 1996. Additionally, plaintiff was admitted to a psychiatric hospital, American Day Treatment Centers, on 13 June 1996, where he was treated daily for six hours per day for approximately one month.
7. Mr. Meares told Ms. Williams that he would be responsible for providing plaintiff's medical records to the Industrial Commission along with the compromise settlement agreement. The order approving the settlement agreement was drafted by Ms. Williams. The order states that the agreement is being made "upon the defendants' stated or implied assertion that all pertinent medical reports have been submitted with the Agreement to the Commission as required by Rule 502(3)(a)." Neither Ms. Williams nor Mr. Meares updated plaintiff's medical records for submission with the compromise settlement agreement to the Commission.
8. After the mediation, Mr. Meares wrote to Ms. Williams, requesting that she send the compromise settlement agreement already signed by defendants to him so that he could take it by hand to the Commission to have it approved. Ms. Williams complied with Mr. Meares' request. Mr. Meares hand delivered the agreement to the Commission with attached medical records on 29 August 1996. On the same day, Deputy Commissioner George Glenn signed an order approving the agreement.
9. When medical records are submitted to the Commission along with a compromise settlement agreement, they are placed in the Commission file, specifically in order to allow review of the records submitted with the agreement.
10. Several treatment records from Dr. Barringer and Dr. Conder for psychological and psychiatric care, including those for treatment rendered on 6 June, 25 and 30 July, as well as handwritten notes from Dr. Conder encompassing 21 March 1996 through 8 August 1996, and records from plaintiff's admission and daily month-long treatment at American Day Treatment Center were not submitted to the Commission with plaintiff' compromise settlement agreement. Those typewritten notes from Dr. Conder and Dr. Barringer were contained in defendant-insurer's file later produced by defendants' counsel.
11. In addition, notes of treatment with Dr. Conder for 18 and 25 April and 2, 9, 16, 23 and 30 May 1996, were not submitted to the Commission, but were in defendants' possession at the time of Dr. Conder's deposition.
12. Sandra Walthall (formerly Sandra Goodyear) was responsible for approving medical treatment for defendant-carrier in plaintiff's case. Ms. Walthall testified that she saw notes in her file indicating that she approved medical treatment for plaintiff at American Day Treatment Center. As a condition of payment, defendant-carrier generally requires providers to submit medical records along with their bills.
13. Sheila Higgins, health manager for defendant-employer, monitored plaintiff's case between the time of his accident and the date of the compromise settlement agreement. During that time, it was her job to track the medical treatments and assign rehabilitation nurses. Ms. Higgins did receive records from the rehabilitation nurse assigned to plaintiff. However, Ms. Higgins was unable to produce a file reflecting those records.
14. After reviewing the missing records, Deputy Commissioner Glenn testified that he would not have approved the compromise settlement agreement had those records been submitted with the agreement.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In Atkins v. Kelly Springfield Tire Co., 154 N.C. App. 512,571 S.E.2d 865 (2002), the North Carolina Court of Appeals held:
 If the employer and the injured employee reach an agreement regarding compensation, such agreement, "accompanied by a full and complete medical report, shall be filed with and approved by the Commission; otherwise such agreement shall be voidable by the employee or his dependents." N.C. Gen. Stat. § 97-82(a).
 In addition to the statutory mandate that the agreement be "accompanied by a full and complete medical report", N.C. Industrial Comm. R. 501(3) states "no agreement will be approved until all relevant medical, vocational and nursing rehabilitation reports known to exist in the case have been filed with the Industrial Commission." While Rule 503(3) does not define the term "relevant medical reports", reading 501(3) in light of N.C. Gen. Stat. § 97-82(a) leads us to conclude that relevant records include the full and complete medical records related to the work-related injury.
2. In the present case, a full and complete medical report was not submitted with the compromise settlement agreement, and thus the agreement is voidable by the employee. Id. Also, Deputy Commissioner Glenn testified that had such records been submitted he would not have approved the settlement.
 ***********
Based upon the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 ORDER
1. The Compromise Settlement Agreement in this matter is hereby SET ASIDE.
2. The remaining issues in this claim are hereby remanded to the Deputy Commissioner Section for hearing on the merits.
3. Defendants shall pay the costs due the Commission.
This the ___ day of August, 2003.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ PAMELA T. YOUNG COMMISSIONER
 S/_____________ THOMAS J. BOLCH COMMISSIONER